UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
M.F., a minor, by and through his parent and
natural guardian YELENA FERRER; M.R., a
minor, by and through her parent and natural
guardian JOCELYNE ROJAS; I.F., a minor, by
and through her parent and natural guardian
JENNIFER FOX, on behalf of themselves and a
class of those similarly situated; and THE
AMERICAN DIABETES ASSOCIATION, a
nonprofit organization,

        Plaintiffs,                              **OPINION & ORDER**

        - against -                        18 Civ. 6109 (NG)(SJB)

THE NEW YORK CITY DEPARTMENT OF
EDUCATION; THE NEW YORK CITY
DEPARTMENT OF HEALTH AND MENTAL
HYGIENE; THE OFFICE OF SCHOOL
HEALTH; THE CITY OF NEW YORK; BILL
DE BLASIO, in his official capacity as Mayor of
New York City; RICHARD A. CARRANZA, in
his official capacity as Chancellor of the New
York City Department of Education; OXIRIS
BARBOT, in her official capacity as Acting
Commissioner of the New York City Department
of Health and Mental Hygiene; and ROGER
PLATT, in his official capacity as Chief Executive
Officer of the Office of School Health,

        Defendants.
--------------------------------------------------------------x
GERSHON, United States District Judge:

        This case, brought as a class action, seeks declaratory and injunctive relief pursuant to

Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504"); Title II of the

Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.* ("ADA"); and the New York

City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 *et seq.* ("NYCHRL"). It alleges that the

defendants (collectively referred to as New York City Department of Education, or "DOE") have

1

failed to provide appropriate care to students with type 1 and type 2 diabetes in New York City public schools, in violation of the students' rights under these laws.   Named plaintiffs in this action are three children, by and through their parents and natural guardians, who have type 1 diabetes and attend DOE schools.   Additionally, the American Diabetes Association is suing as an organizational plaintiff on behalf of its members, who include children with type 1 and type 2 diabetes who attend DOE schools and their parents.   Plaintiffs now move for partial summary judgment pursuant to Federal Rule of Civil Procedure 56.   For the reasons set forth below, plaintiffs' motion is granted.

## I.        Procedural Background

By order dated June 18, 2019, plaintiffs' motion for class certification was granted.   *M.F. by & through Ferrer v. New York City Dep't of Educ.*, 2019 WL 2511874 (E.D.N.Y. June 18, 2019).   The class is defined as all students with type 1 or type 2 diabetes who are now or will be entitled to receive diabetes-related care and attend New York City Department of Education schools.   *Id.*

The parties have engaged in settlement negotiations for the past two and a half years and have mutually resolved nearly all substantive areas of dispute, including as to Section 504 planning to determine the needs of students with diabetes and how defendants will meet those needs; the provision of care in the least restrictive environment as required by Section 504; and training for staff (nurses, paraprofessionals, Section 504 coordinators, and teachers and other staff) during the school day and in afterschool activities.   *See* Memoranda of Understanding ("MOUs"), ECF Nos. 91-1–91-6, 94-1, 96-1, 97-1.   The parties also continue to negotiate other aspects of the case, such as how agreed-upon or court-ordered relief will be monitored and enforced.   However, the parties have been unable to resolve, and plaintiffs now move for partial summary judgment on, two

discrete issues: the availability of nurses to administer insulin to students with diabetes who cannot self-administer insulin during field trips and the availability of trained adults to administer emergency glucagon to all students with diabetes while on school buses.

## II.   Undisputed Facts

The parties have stipulated to certain facts and additional undisputed facts appear in the record or were agreed upon by the parties at oral argument.  In this case, the parties agree that there are no material facts in dispute.  Instead, the questions here involve statutory interpretation and the application of the laws to the undisputed facts.  In effect, defendants argue that it is they who are entitled to summary judgment.

### a.  Children with Diabetes in NYC Schools

Defendants have previously represented that there were 1,745 students with type 1 diabetes and 372 students with type 2 diabetes in DOE schools during the 2016–2017 school year.  The DOE classifies children according to the diabetes care they require: "Independent," "Supervised," or "Nurse-Dependent."  Independent students self-administer their own insulin.[1]  Supervised students may require assistance in self-administering their insulin and recognizing and treating hypoglycemia (a condition in which blood sugar, or glucose, level is lower than normal) and with counting carbohydrates.  Nurse-Dependent students cannot self-administer insulin and require an appropriately licensed health professional to assist them.  The parties agree that teachers and other

---

[1] Insulin is a hormone that regulates the amount of glucose in a person's blood.  Insulin takes glucose from the blood into the cells, where it can be used as energy.  Glucose is the body's main energy source.  Thus, failure to produce insulin deprives the body of glucose and, as a result, energy.  Insulin is necessary to sustain life.  People with type 1 diabetes must receive supplemental insulin to help regulate their glucose and energy levels.  Insulin can be delivered through either an injection with a syringe or pen or a pump implanted into the skin.

unlicensed lay staff are not permitted to administer insulin to any student with diabetes.[2]

The greatest diabetes-related danger a student with diabetes faces is the risk of hypoglycemia. It is a serious condition that happens suddenly and requires immediate treatment. Mild and moderate hypoglycemia are characterized by lethargy, confusion, irritability, nervousness, sweat, headache, or weakness. These conditions can be treated easily and effectively with the intake of a quick-acting source of glucose, such as fruit juice, candy, or glucose tabs. If not treated, mild or moderate hypoglycemia can become severe.

Severe hypoglycemia can cause loss of consciousness, seizure, and the inability to swallow; failure to treat severe hypoglycemia immediately can result in death. Severe hypoglycemia is treated with glucagon,[3] a prescription drug that is administered by injection or nasal spray. Glucagon cannot be self-administered. There are rare, non-fatal, allergic-type reactions that may occur with glucagon; symptoms can include itching, respiratory distress, and low blood pressure. But defendants do not dispute that the risk of administering glucagon to an allergic student is outweighed by failing to administer the emergency medication to a student who is unconscious and in need of the drug. Indeed, any student who may require the administration of glucagon during the school day must first provide the school with a valid prescription from a doctor—who has already weighed the risks and benefits of the drug's use—and the permission of

---

[2] In New York State "only licensed health professionals whose scope of practice permits may administer medication to a student in a school setting unless otherwise permitted by Education Law sections," including sections 921 and 921-a, discussed below. 8 N.Y. Comp. R. Regs. tit. 8 § 136.7(e) (2021).

[3] Glucagon is a hormone that raises blood glucose levels by causing the release of glycogen (a form of stored carbohydrate) from the liver. It occurs naturally in the body, but as used in this opinion, it refers to the emergency medication used to treat severe hypoglycemia. Glucagon may be administered through an injection or through a nasal spray.

the child's parent or guardian to carry glucagon.

Plaintiffs have presented evidence—in the form of the declaration of Dr. Henry Rodriguez, a pediatric endocrinologist with 25 years of experience—that calling and waiting for 911 emergency services to arrive in cases of severe hypoglycemia, instead of both administering glucagon and calling 911, places students with diabetes at high risk for death or life-threatening complications such as brain damage or coma. Defendants admit that immediately administering glucagon is "preferable" to waiting for an emergency responder, but do not recognize this practice as a legal mandate. Defendants' Response to Plaintiffs' Rule 56.1 Statement of Undisputed Facts at ¶ 44.

The parties agree that, for the purposes of this motion, defendants were, at all times relevant to this action, and are currently, recipients of federal financial assistance within the meaning of Section 504.

**b. Field Trips**

There is no dispute that students with diabetes are entitled, under the local and federal laws sued upon, to participate in field trips on an equal basis with non-disabled students. There is also no dispute that defendants are obligated to provide trained staff to provide diabetes care on field trips, including nursing services, to enable class members to fully participate in those trips. Defendants rely on contract nurses ("trip nurses") to accompany Nurse-Dependent students and to provide the necessary care during field trips. Based on DOE data from September 2016 through March 15, 2020, for students with disabilities, including diabetes, 2,523 of the 10,873 trip nurse requests—23.2%—were not filled, and defendants admit that the figure may be even higher.

Some students with diabetes are assigned a 1:1 nurse to accompany them during the school day, unlike students who rely on a school's general nurse for the administration of insulin. These

1:1 nurses attend field trips with their assigned students, and separate trip nurses are not required. Additionally, most Supervised or Independent students do not require a trip nurse because there are staff, such as teachers, who are able to administer glucagon in case of emergencies. Thus, for field trips, the specific issue on this motion is the availability of a licensed professional to administer insulin to Nurse-Dependent students.

Defendants' current policy recognizes that, when trip nurses are unavailable, while "the school may ask the parent to attend or alternatively designate an adult who can come on the trip to administer the medication or provide the accommodation . . . . schools cannot require or pressure a parent to attend the trip or designate another adult on account of the student's needs."[4] In accordance with the DOE's policies, without the presence of a person able to administer insulin to Nurse-Dependent students on a DOE field trip, the field trip is canceled or rescheduled for the entire class.

In spite of the written policies, school staff often pressure parents to attend the trips themselves and provide diabetes care for their children, to avoid canceling the field trip for the entire class. This was the case for the parents of M.F., I.F., and M.R., who were asked, or felt pressured to, attend field trips to provide necessary diabetes-related care, to avoid their children's field trips being canceled.

### c. Bus Transportation

The DOE contracts with at least 39 companies to transport approximately 145,000 students to and from school. During the 2018–2019 school year, approximately 200 DOE students with

---

[4] Defendants' policy acknowledges that the "free" aspect of a free, public education guaranteed by Section 504 means that the labor of caring for children with disabilities during the school day cannot be imposed on the children's families. *See* discussion below, p. 11.

diabetes received bus transportation.[5]  Of those students, 170 were assigned to "specialized" buses (door-to-door), and 102 were assigned to "general" buses (stop-to-school).  General buses are staffed with a bus driver, while specialized buses are typically staffed with a bus driver and a bus attendant.  The assistance from bus attendants is limited to preventing students from entering or leaving the bus while it is in motion, stopping students from throwing objects out of bus windows, and assisting students in boarding or leaving the vehicle, to the extent that is required by the student's disability.  Both bus drivers and bus attendants are contracted providers, who are employed by vendor companies.  Neither bus drivers nor bus attendants are trained to administer glucagon.

In addition, depending on their individual needs, many Supervised and Nurse-Dependent students who ride specialized buses are also assigned a 1:1 paraprofessional for diabetes care on the bus as a reasonable accommodation.  Paraprofessionals receive student-specific diabetes care training in order to care for a student with diabetes and may administer glucagon.

In effect, only students with a 1:1 paraprofessional, who is actually present, are able to receive glucagon in case of a diabetic emergency on a school bus.  Thus, for bus transportation, the specific issue on this motion is the availability of a trained adult to administer glucagon to class members when an assigned paraprofessional is not present for any reason.  I will address the issues facing class members on specialized and general buses separately.

For students on specialized buses, including all Nurse-Dependent students and some

---

[5] The Joint Stipulation states that "approximately 200 students with a [Diabetes Medication Administration Form] receive transportation services."  However, a declaration submitted by Jodi Sammons Chen, the Director of Special Populations of the DOE Office of Pupil Transportation states that there were 272 students with a Diabetes Medication Administration Form who receive transportation services.  I rely on the agreed upon figure.

Supervised students, depending on needs, defendants do not dispute that they have an obligation to provide appropriately trained adults on the bus to ensure the safety of class members. However, defendants rely on paraprofessionals to meet that obligation, and defendants acknowledge that they have considerable difficulty recruiting and retaining paraprofessional staff. Moreover, the DOE does not train backup paraprofessionals and, as noted, bus drivers and bus attendants are not trained to administer glucagon. As a result, if a student with diabetes is entitled to a paraprofessional to ride the bus, but a paraprofessional cannot be found or the assigned paraprofessional does not report to work, that student is barred from taking the bus.

During the 2017–2018 school year, for example, class representative I.F. was denied transportation for the entire first month of school because of delays in assigning a transportation paraprofessional. During the 2018–2019 school year, I.F.'s father frequently had to bring her to and from school, because, while I.F. was assigned a paraprofessional, the paraprofessional was frequently absent on short notice. During the 2018–2019 school year, I.F.'s paraprofessionals also had high turnover. After I.F.'s first paraprofessional of that school year resigned in December of 2018, the replacement paraprofessional resigned in January of 2019, after only two weeks. A third paraprofessional for that school year was not secured until February of 2019. In the interim, I.F.'s parents were required to take her to and from school—an hour and a half each way—totaling six hours of travel for her parents each school day. The third replacement paraprofessional quit one week after starting.

For students on general buses, who are not assigned a paraprofessional, including Independent and some Supervised students who can self-manage their diabetes care, defendants do not train bus drivers to recognize, or permit them to respond to, severe diabetes-related emergencies, aside from calling 911. Because these students are not assigned a trained

paraprofessional, and defendants do not train or permit bus drivers to administer glucagon in the case of severe hypoglycemia, many parents and guardians simply drive their children themselves rather than risk the serious complications of severe hypoglycemia. Thus, the figure above regarding the number of students who receive bus services may not reflect the number of students with diabetes who would otherwise utilize bus transportation to and from school if an adult were available to administer glucagon in case of an emergency.

While not trained to administer glucagon, bus drivers and attendants receive State-approved basic safety training through the New York State Department of Education, which is provided by private companies. The training is required to take place at least twice a year for at least two hours each time, with at least one hour related to the special needs of students with disabilities. Bus drivers and bus attendants are trained how to provide a source of quick-acting glucose if a student appears to be suffering from a low blood sugar emergency. Bus attendants receive further training on the needs of students with disabilities, which includes "a diabetes component." Bus drivers and bus attendants also receive training on how to administer epinephrine auto-injectors (commonly referred to as "epi-pens") to students with allergies who appear to be experiencing anaphylactic symptoms.

In addition, the DOE asserts that it has recently taken, or is in the process of taking, the following affirmative steps:

- require all bus drivers and bus attendants to receive basic diabetes care training provided by the DOE, in addition to the State-mandated training they already receive;

- inform bus drivers and bus attendants which specific students on the bus have diabetes;

9

- remind bus company management and their attendants that, providing a source of quick-acting glucose to a student with diabetes experiencing an apparent low blood sugar emergency is permissible and consistent with their State-approved and DOE training; and

- advise bus company management and their drivers that if a possible diabetes emergency is brought to the driver's attention and they can safely stop bus, they may provide the student a source of quick-acting glucose prior to calling 911.

The parties agree that, as long as one adult on each bus is trained to administer glucagon, the vast majority of class members—whether Independent, Supervised, or Nurse-Dependent—can safely ride school buses, even when an assigned paraprofessional is absent.

## III.   Standard of Review

Rule 56(a) allows the entry of summary judgment, after adequate time for discovery and upon motion, where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  To survive a motion for summary judgment, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (*quoting* Fed. R. Civ. P. 56(e)).

Under Rule 54(c) of the Federal Rules of Civil Procedure, "final judgment should grant the relief to which each party is entitled."  Fed. R. Civ. Pro. 54(c).  Moreover, "[i]f local authorities 'fail in their affirmative obligations' under federal law, 'the scope of a district court's equitable powers . . . is broad, for breadth and flexibility are inherent in equitable remedies.'"  *Disabled in Action v. Bd. of Elections in City of New York*, 752 F.3d 189, 198 (2d Cir. 2014) (quoting *Swann v. Charlotte–Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)).    At the same time, a remedial

10

order must be "tailor[ed] . . . to fit the nature and extent of the violation." *United States v. Yonkers Bd. of Educ.*, 837 F.2d 1181, 1235 (2d Cir. 1987).

## IV.   **Legal Framework**

Plaintiffs sue under federal and New York City laws that require students with disabilities, including students with diabetes, to be provided all necessary accommodations to achieve full and equal access to all school programs and activities.

The regulations implementing Section 504 of the Rehabilitation Act require schools to provide students who have a qualified disability, which includes students with diabetes, a free, appropriate public education.  34 C.F.R. § 104.33; *see Bryant v. New York State Educ. Dep't*, 692 F.3d 202, 216 n10 (2d Cir. 2012).  Those regulations define an "appropriate" education as "the provision of regular or special education and related aids and services that . . . are designed to meet individual educational needs of handicapped persons as adequately as the needs of nonhandicapped persons are met…."  34 C.F.R. § 104.33(b)(1).  They also require that educational programs provide "[non-academic and extracurricular services and activities in such manner as is necessary to afford handicapped students an equal opportunity for participation in such services and activities."  34 C.F.R. § 104.37(a)(1).  The ADA similarly provides for equal access in education.  *See* 42 U.S.C. § 12132; 28 C.F.R. §§ 35.101, *et seq.*  In fact, where, as here, "the subtle distinctions in the statutes are not implicated," the standards set forth in both Title II of the ADA and Section 504 "are generally the same . . . ," and thus, the Second Circuit "'treat[s] claims under the two statutes identically.'"  *Wright v. N.Y. State Dep't of Corrs.*, 831 F.3d 64, 72 (2d Cir. 2016) (*quoting Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003)).

Under both Section 504 and the ADA, a defendant discriminates against a qualified student who has a disability if the services provided to that student, including field trips and bus

transportation, are not equal to or as effective as the services offered to non-disabled students.  34 C.F.R.  §  104.4(b)(1)(ii)–(iii);  28  C.F.R.  §  35.130(b)(1)(ii)–(iii).   Such  equal  access  can  be achieved  through,  among  other  things,  reasonable  modifications  to  policies,  practices,  and procedures; changes in methods of administration; and revisions to eligibility criteria.  28 C.F.R. §§ 35.130(b)(3)(i)–(ii), (b)(7).  "In short, the Rehabilitation Act and Titles II and III of the ADA prohibit  discrimination  against  qualified  disabled  individuals  by  requiring  that  they  receive 'reasonable accommodations' that permit them to have access to and take a meaningful part in public services and public accommodations."  *Powell v. Nat'l Bd. of Med. Examiners*, 364 F.3d 79, 85, *opinion corrected*, 511 F.3d 238 (2d Cir. 2004).

The NYCHRL similarly provides that "[i]t shall be an unlawful discriminatory practice for any person . . . or provider of public accommodation because of the person's actual or perceived . . . disability . . . directly or indirectly, to refuse, withhold from or deny to such person . . . any of the accommodations, advantages, services, facilities or privileges [there]of . . . ."  N.Y.C. Admin. Code § 8-107(4)(a).  Covered entities must "make reasonable accommodation" to enable "persons with disabilities . . . to . . . enjoy the right or rights in question, provided that the disability is known or should have been known by the covered entity."  N.Y.C. Admin. Code § 8-107(15).

In order to establish a violation under the ADA, the plaintiffs must demonstrate that: (1) they are "qualified individuals" with a disability; (2) that the defendants are subject to the ADA; and (3) that plaintiffs were denied the opportunity to participate in or benefit from defendants' services,  programs,  or  activities,  or  were  otherwise  subject  to  discrimination  by  reason  of plaintiffs' disabilities.  *See Powell*, 364 F.3d at 85.  The requirements for Section 504 and the NYCHRL are similar, but to establish a violation under Section 504, plaintiffs must also show that the defendants receive federal funding.  *Id.*

12

Plaintiffs can show that they were excluded from a benefit provided by an entity by showing that the entity refused to provide a reasonable accommodation. Plaintiffs bear the "light burden" of producing evidence of the existence of a facially reasonable and plausible accommodation. *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 190 (2d Cir. 2015). If plaintiffs satisfy their burden under the ADA, they will also satisfy their burdens under Section 504 and the NYCHRL. *See Williams v. City of New York*, 121 F. Supp. 3d 354, 364 n10 (S.D.N.Y. 2015). The burden of persuasion then shifts to defendants to show that the proposed accommodation is unreasonable. *Dean*, 804 F.3d at 190. "That burden may be met by establishing that the requested accommodation would (a) impose undue hardship on the operation of the defendant's service, program, or activity, or (b) require a fundamental or substantial modification to the nature of its academic program or standards." *Id.* Defendants are not required to take any action that they can establish is unreasonable. *See* 28 C.F.R. § 35.150(a)(3); 34 C.F.R. § 104.12. Defendants in this case do not attempt to meet this burden by arguing that any accommodation proposed by plaintiffs would impose on them an undue hardship or require a fundamental alteration of defendants' programs. Instead, defendants argue that what they have already provided is a sufficient accommodation.

For the purposes of this motion, the parties agree that bus transportation and field trips are "program[s] or activit[ies]" provided by the defendants within the meaning of Section 504 and the ADA and a "service" or "facility" within the meaning of the NYCHRL; that defendants were, at all times relevant to this action, and are currently, recipients of federal financial assistance within the meaning of Section 504; and that plaintiffs and members of the class were, at all times relevant to this action, and are currently, "otherwise qualified individuals with disabilities" within the meaning of Section 504 and the ADA. Thus, the third prong—whether plaintiffs were

discriminated against by reason of their disabilities—is the only one at issue here.

## V.    Discussion

The two disputed issues that remain in this case relate to whether the defendants have denied, and continue to deny, services to students with diabetes by (a) not assuring that there are trip nurses to accompany children with diabetes on field trips, and (b) not assuring that there are trained adults available to administer glucagon on all buses transporting diabetic students. Specifically, the parties dispute whether the DOE must provide, as necessary and reasonable accommodations, additional resources to ensure that trip nurses are more reliably available to accompany children with diabetes on school trips and training for bus drivers and bus attendants in the use of glucagon during a hypoglycemic emergency to ensure that there is always a trained adult who is capable of administering glucagon on school buses.

### a.   Field Trips

Defendants argue that their current field trip policy, which calls for providing trip nurses, is reasonable and that nothing further is required under the Rehabilitation Act, the ADA, and New York City law because the majority of school trips take place without incident.  But this argument misses the point because defendants have failed to properly implement the policy in practice, and over a prolonged period of time.  Defendants do not dispute that approximately one quarter of students with diabetes have been denied access to field trips when trip nurses were unavailable and that the figure may be even higher.  Their accommodation is clearly ineffective in practice, and thus, not reasonable.  *See Dean*, 804 F.3d at 189 ("The hallmark of a reasonable accommodation is effectiveness.").  As a result, I find that the defendants have discriminated against students with diabetes by not reasonably accommodating their medical needs on field trips, in violation of the

14

ADA, Section 504, and the NYCHRL.[6]

Plaintiffs suggest multiple facially reasonable proposals to remedy this discrimination, including the establishment of a "float pool" of nurses to call upon to address sudden cancellations or unfilled assignments. Defendants, anticipating a finding of discrimination, have endorsed this proposal, though they report that they thus far have "not been able to secure funding by the City." Defendants' Opposition at p. 16. Defendants have not submitted any support for this factual statement and have not argued that their continued failure to secure funding is the result of an undue financial or administrative burden. Defendants' asserted inability to secure funding, absent a showing of undue hardship, is not a viable defense, and they have thus not met their burden of showing that plaintiffs' requested accommodation is unreasonable.

I therefore grant plaintiffs' requested relief: defendants will be ordered to conduct a needs assessment of the estimated shortfall of trip nurses and to hire a sufficient number of float pool nurses to ensure that all field trip requests by class members are fulfilled.

### b. Bus Transportation

There is no dispute regarding the seriousness of severe hypoglycemia, a life-threatening condition that can happen very suddenly and, if left untreated, can result in impaired cognition, seizures, coma, and even death. To prevent these outcomes, glucagon must be administered immediately by a trained adult and is safe even if administered mistakenly or unnecessarily.

---

[6] Though not argued in opposition, defendants have previously suggested that there is no discriminatory impact when a trip nurse is unavailable because the trip is cancelled for the entire class, and not just for the student with diabetes. Defendants, in effect, compare the experience of a child with diabetes to a child who does not have diabetes in the same classroom. However, the appropriate comparator in such instances is a non-disabled student in a class of other non-disabled students. A policy or practice of regularly canceling field trips for classes that include disabled students, while classes of non-disabled students are able to attend field trips, discriminates against the disabled students.

Plaintiffs move for summary judgment, seeking relief that ensures that at least one adult on every school bus with students with diabetes is trained in the treatment of hypoglycemia, including the administration of glucagon.   Defendants argue that the current policy of having trained paraprofessionals accompany Nurse-Dependent and some Supervised students during transit on specialized buses, and having an adult call 911 during a hypoglycemic episode on both specialized and general buses is a sufficient and reasonable accommodation.

As to specialized school buses, plaintiffs point to the undisputed fact that, with the current accommodation of utilizing bus paraprofessionals to provide emergency diabetes care to Nurse-Dependent and some Supervised students, students with diabetes are frequently denied bus transportation when their assigned paraprofessionals are absent.   This violates their right to free, appropriate public education and equal access to educational opportunities.

Defendants have acknowledged their struggles with hiring, assigning, and retaining paraprofessionals, and the record makes clear that backup paraprofessionals are not always available for days when primary paraprofessionals are absent.   Defendants also acknowledge that students whose paraprofessionals are absent are barred from riding the school bus.   Thus, that bus drivers and bus attendants can call 911 in an emergency is of no value to a student who has already been prohibited from riding the bus.   In sum, defendants' current policy of providing a 1:1 paraprofessional and having bus drivers and bus attendants call 911, but take no steps to administer glucagon, is not a reasonable accommodation on specialized buses because it is not effective.

As to students on general buses, who are not assigned a paraprofessional, they are also currently without equal access to transportation services because there are no adults who can administer life-saving glucagon to them in case of emergency.   Defendants' current accommodation of having bus drivers call 911 but take no steps to administer glucagon is not

reasonable.  Even defendants have acknowledged that immediately administering glucagon is "preferable" to waiting for an emergency responder.[7]  Defendants' Response to Plaintiffs' Rule 56.1 Statement of Undisputed Facts at ¶ 44.  In fact, the lack of an adult on the bus who is trained to administer glucagon unnecessarily puts those students' lives at risk, and likely results in many students choosing to forego bus transportation to avoid the potential consequences of severe hypoglycemia.

On the undisputed facts, plaintiffs have met their burden of showing that the existing accommodations offered by defendants are ineffective because defendants do not reliably provide a trained adult on general or specialized school buses who is able to administer glucagon in case of an emergency.  This failure to accommodate students by training adults to administer necessary, life-saving glucagon has led to students with diabetes being discriminated against and denied transportation services for which they are otherwise eligible.  Plaintiffs have therefore shown a violation of Section 504, the ADA, and the NYCHRL.

The parties agree that, so long as any adult on the bus is trained to respond to hypoglycemia, it is safe for the "vast majority" of students with diabetes to ride.  This is true whether the student is on a general bus or a specialized bus.  Thus, plaintiffs argue, a reasonable accommodation would be to train all bus drivers and bus attendants in the administration of glucagon and mandate its usage, as appropriate.  The defendants agree that, if the current accommodation is rejected as insufficient, it makes the most sense to craft a resolution in which the individuals already on the

---

[7] I do not address at length the DOE's argument that, because "most trips to and from school are typically of short duration in relation to the school day itself, . . . any sudden emergency can reasonably be accommodated by calling 911 for emergency medical assistance."  Defendants' Opposition at p. 2.  Defendants admit that some students, like I.F., travel from the Bronx to the Lower East Side of Manhattan, totaling approximately three hours on the bus each day.  That some students have shorter bus trips does not address the needs of the others.

school bus each day are trained to administer glucagon, instead of creating new positions. Therefore, the only proposal I address at length is the training of bus drivers and bus attendants in the administration of glucagon.[8]

Defendants do not argue that this accommodation would fundamentally alter the nature of the services provided. Nor do defendants argue that requiring all bus drivers and bus attendants to be trained to recognize severe hypoglycemia and to administer glucagon during such an event would constitute an undue burden.[9] In fact, during oral argument, defendants acknowledged that "there's not a great gap between what the plaintiffs and defendants want," because training the adults already responsible for children with diabetes is "something that [the DOE] might otherwise like to do." Transcript of Nov. 30, 2021 Oral Argument at 23:21–24.

Instead, defendants oppose this proposal because, they argue, State law prohibits contracted bus drivers and bus attendants from administering glucagon because they are not "school personnel" under New York State's Education Law § 921, entitled "Training of unlicensed school personnel to administer certain medications."

The parties' dispute centers around section 921 and a related section, 902-a, entitled

---

[8] Plaintiffs have proffered additional, alternative accommodations, such as "cross-training" other paraprofessionals or nurses who may already be on a specialized bus assigned to other students; ensuring the hiring and training of paraprofessionals to fill in as back-ups for absences and delays in assignments; and hiring direct employees of the school to ride on the bus with students with diabetes. Plaintiffs, however, seek to avoid replicating the problems inherent in the present paraprofessional position by creating new roles with largely the same structure and drawbacks.

[9] Defendants do not argue that plaintiffs' proposal to train both bus drivers and bus attendants is excessive and therefore unreasonable. Though not raised by defendants, I have considered whether having two trained adults—a bus driver and bus attendant—on one bus is more than what is required by the statutes at issue. After hearing from the parties at oral argument, I am satisfied that there is no greater burden to the defendants in requiring both bus drivers and bus attendants to be trained in the administration of glucagon.

"Treatment of students diagnosed with diabetes by school personnel."  Section 902-a authorizes licensed medical professionals, such as nurses, who are employed by the school district to, *inter alia*, administer prescribed insulin and glucagon and "teach an unlicensed person to administer glucagon . . . during the school day on school property and at any school function. . . . "  N.Y. Educ. Law § 902-a (McKinney 2021).  Section 902-a also provides that "[n]othing in this section shall authorize unlicensed persons to perform these services except as otherwise permitted by section nine hundred twenty-one of this article."  *Id.*  Section 921(1), referenced in § 902-a, allows licensed nurses and physicians to train

> unlicensed school personnel to administer prescribed glucagon or epinephrine auto injectors in emergency situations, where an appropriately licensed health professional is not available, to pupils who have the written permission of a physician or other duly authorized health care provider for the administration of glucagon or emergency epinephrine auto injector, along with written parental consent, during the school day on school property and at any school function . . . .

N.Y. Educ. Law § 921(1) (McKinney 2021).  Defendants do not dispute that, for the purposes of § 921, school buses are defined as "school property," even though they are typically owned by contracted entities, and not by school districts.[10]  N.Y. Educ. Law § 11 (McKinney 2021).

For the reasons described below, I reject defendants' argument and find that the phrase "school personnel" in section 921 encompasses not only defendants' direct employees, such as teachers, but also school bus drivers and bus attendants who are employed by DOE contractors.

---

[10] New York's Vehicle and Traffic Law expressly defines a "school bus" as including "[e]very motor vehicle . . . privately owned and operated for compensation for the transportation of pupils . . . to or from school or school activities."  N.Y. Veh. & Traf. Law § 142 (McKinney 2021); *see also* 8 N.Y. Comp. R. Regs. tit. 8 § 156.3(a)(2) (2021).  And, under the Codes, Rules, and Regulations of the State of New York, a school bus driver is defined as "any person who drives a school bus which is owned, leased or contracted for by a public school district, board of cooperative educational services or nonpublic school for the purpose of transporting pupils to or from school or school activities."  8 N.Y. Comp. R. Regs. tit. 8 § 156.3(a)(1) (2021).

To begin with, New York State Education Law does not define "school personnel" and, therefore, that term requires interpretation. The title of section 902-a refers to "school personnel" who are permitted to treat students with diabetes, though that phrase is not used in the body of the statute. Instead, the body of section 902-a refers to the treatment provided by "[l]icensed nurses, nurse practitioners, physician assistants, or physicians employed by school districts." N.Y. Educ. Law § 902-a. Section 921, on the other hand, refers in both the title and body of the statute to "unlicensed school personnel" who may be trained to administer glucagon, but without further description.

While "the text of the statute must take precedence over its title," "a title or heading may help clarify or point the meaning of an imprecise or dubious provision. . . ." *People v. Page*, 35 N.Y.3d 199, 205 n3, *cert. denied sub nom. Limmia Page v. New York*, __ U.S. __, 141 S.Ct. 601 (2020) (quoting *Squadrito v. Griebsch*, 1 N.Y.2d 471, 475 (1956)). Here, the title of section 902-a helps clarify that "school personnel" refers to the group of licensed personnel expressly identified in the body. And, while section 902-a qualifies the licensed personnel as being "employed by" a school district, defendants do not argue that "school personnel" in § 902-a must be read as being limited to direct employees of a school district. In fact, defendants admit that trip nurses are contract workers, who are treated as individuals "employed by the school district" and are thus authorized to provide diabetes care under section 902-a.[11]

Section 921's purpose, as defined by its text, supports a reading of "school personnel" as including bus drivers and bus attendants who are employed by DOE contractors. Since school

---

[11] Defendants stated during oral argument that, albeit rarely, some paraprofessionals who provide care to students with diabetes are also contract employees. Defendants offer no explanation for why contracted paraprofessionals would be permitted to administer glucagon under § 921, but not contracted bus drivers and bus attendants, if duly trained.

buses are "school property" and since section 921's express purpose is to provide emergency care to "pupils . . . during the school day on school property," reading "school personnel" as including the people who work on the school buses and, thus, can provide that care, makes sense.  N.Y. Educ. Law § 921.  Though not determinative, another provision of the Education Law, that requires codes of conduct on "school property," supports this position through its use of demonstrative examples of "school personnel" as including "bus drivers and monitors."  N.Y. Education Law § 2801-a.[12]

Additionally, common sense dictates that, in reading sections 921 and 902-a together, the phrase "school personnel" should be treated the same in two related statutes, one of which references the other.  Section 921 refers to "unlicensed school personnel" who may be trained to administer glucagon in emergency situations by the licensed "school personnel" described in section 902-a.  What distinguishes the use of the phrase "school personnel" between these two statutes is the licensure of the individuals described, not whether they are direct employees of a school district or employees of a contracted vendor.

The indemnity provisions of §§ 902-a and 921 further support a reading of the phrase "school personnel" as referring to both direct employees of a school district and the employees of a school district's contracted entities.  The provisions, which are identical, provide broad indemnification to protect as many roles as possible by applying to not only the direct employees of a school district, but also a school district's "agents."  N.Y. Educ. Law §§ 902-a(2), 921(2).  If sections 902-a and 921 were read as applying only to direct employees, it would render superfluous

---

[12] Under N.Y. Education Law § 2801-a, comprehensive district-wide safety plans must include policies and procedures for responding to threats and acts "of violence by students, teachers, other school personnel *including bus drivers and monitors*, as well as visitors to the school. . . ."  N.Y. Educ. Law § 2801-a(2)(a)–(b) (McKinney 2021) (emphasis added).

the indemnification of a school district's agents.

Defendants' sole basis for arguing that § 921 does not apply to bus drivers and bus attendants is its comparison of the language of § 921 with the language of a relatively recent amendment to New York Education Law § 921-a, entitled "On-site epinephrine auto-injector",[13] which does not use the language "school personnel" and does not address glucagon administration. I do not find defendants' argument persuasive.

Section 921-a applies to "[s]chool districts, boards of cooperative educational services, county vocational education and extension boards, charter schools, and non-public elementary and secondary schools in this state, any person employed by any such entity, *or employed by a contractor of such an entity* while performing services for the entity," and does not use the term "school personnel." N.Y. Educ. Law § 921-a (emphasis added). The emphasized language represents the 2017 addition to the statute, upon which defendants base their argument.[14] It is defendants' position that, by amending § 921-a to expressly include contract employees, the absence of the same language in § 921 means that contract employees are not covered by the statute. Relying on a statute having a different purpose,[15] in which the legislature has chosen to expressly identify the different categories of entities subject to the statute—rather than by use of

---

[13] N.Y. Educ. Law § 921-a, formerly § 921, was renumbered Education Law § 921-a and amended effective December 19, 2017.

[14] I note that when § 921-a was amended, a correlative provision of the New York Public Health Law was simultaneously amended with the same revision. According to New York Public Health Law § 3000-c, only specific categories of individuals are permitted to administer epinephrine. Thus, to effect a change to § 921-a, a change to § 3000-c was required. There are no similar provisions of the Public Health Law applicable to glucagon.

[15] Section 921-a permits schools to provide and maintain on site epinephrine auto-injectors that can be used for any student or staff member with symptoms of anaphylaxis regardless of whether or not there is a previous history of severe allergic reaction, and without requiring parental consent or a prior prescription.

the term "school personnel"—is not persuasive in understanding the legislature's meaning of "school personnel" in the statutes at issue.

In sum, I see no sound reason to read "school personnel" as narrowly as defendants argue. I will not interpret the statutes in a manner that would render them unreasonable, ineffective, or absurd; cause objectionable results; or effect a hardship or injustice. *See* N.Y. Stat. Law §§ 141–46 (McKinney 2021). I therefore find that N.Y. Educ. Law § 921 applies to contracted bus drivers and bus attendants.

Defendants speculate that the relevant unions would object to their members being required to administer emergency glucagon and would likely seek to collectively bargain the requirement between the contractors and their employees. Nonetheless, defendants do not argue that the presumed union opposition would create an undue burden on them. Apart from the absence of factual support for these assumptions, defendants acknowledge that, even if a labor dispute were to arise between the contractors and their employees, it would not relieve defendants of their legal obligations to students with diabetes. As a result, I do not consider the hypothetical impact of the contractors' collective bargaining process on the reasonableness of the accommodation sought.

Defendants make no argument and offer no facts to establish an undue hardship. For this reason, the cases upon which they rely, *McDavid v. Arthur*, 437 F. Supp. 2d 425 (D. Md. 2006), and *AP ex rel. Peterson v. Anoka-Hennepin Indep. Sch. Dist. No. 11*, 538 F. Supp. 2d 1125, 1143 (D. Minn. 2008), are inapposite. Insofar as those cases suggest that an undue hardship or fundamental alteration of the program could arise from ordering bus drivers and bus attendants to be trained to administer glucagon in an emergency situation, the record before me offers no support for such a conclusion. Defendants confirm that bus drivers and bus attendants are already trained to inject epinephrine in cases of anaphylaxis and to administer glucose in cases of mild and

23

moderate hypoglycemia and have not suggested any reason why the administration of glucagon should be treated any differently.

Plaintiffs' requested reasonable accommodation is, therefore, granted, and defendants will be ordered to train all bus drivers and bus attendants who transport children with diabetes to administer glucagon in emergency situations.

## VI.    Conclusion

Plaintiffs' motion for partial summary judgment is granted.

The court declares that defendants have discriminated against students with diabetes under Section 504 of the Rehabilitation Act of 1973, Title II of the Americans with Disabilities Act of 1990, and the New York City Human Rights Law, and failed to provide a free, appropriate public education because they have not provided students with diabetes the services determined to be necessary to meet their needs.  Specifically, defendants have denied students with diabetes equal access to the educational opportunities afforded by field trips by failing to provide trip nurses to accompany Nurse-Dependent students with diabetes, and have denied appropriate transportation services to students with diabetes by failing to ensure the presence of adults on school buses with training to administer glucagon in the event of severe hypoglycemia.

Plaintiffs are entitled to an injunction directing defendants to conduct a needs assessment of the estimated shortfall of trip nurses and to hire a sufficient number of float pool nurses to ensure that all field trip requests by class members are fulfilled.

Plaintiffs are further entitled to an injunction directing the defendants to train all bus drivers and bus attendants in the administration of glucagon in emergency situations in order to ensure that at least one adult on each bus is trained to administer glucagon in the event of a diabetic emergency.

24

The parties are directed to meet and confer regarding the relief granted and to provide a joint status report and proposed schedule for the submission of an agreed upon form of judgment by February 28, 2022.

**SO ORDERED.**

_____/s/_____

**NINA GERSHON**
**United States District Judge**

January 27, 2022
Brooklyn, New York

25